UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER VAN VALLIS-BRIGHT,
an individual,

    Plaintiff,

v.

SCRIPPS MEDIA INC., a foreign company,

    Defendant.

Case No. 22-cv-10227

Honorable Paul D. Borman

Magistrate Judge Curtis Ivy, Jr.

/

| | |
|---|---|
| Benjamin M. Low (P82534)<br>JAFFE RAITT HEUER & WEISS, P.C.<br>Attorneys for Plaintiff<br>27777 Franklin Road, Suite 2500<br>Southfield, MI 48034<br>(248) 351-3000<br>benlow@jafelaw.com | Thomas J. Davis (P78626)<br>Ryan D. Bohannon (P73394)<br>KIENBAUM HARDY VIVIANO<br>PELTON & FORREST, P.L.C.<br>Attorneys for Defendant<br>280 N. Old Woodward Ave., Ste. 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>tdavis@khvpf.com<br>rbohannon@khvpf.com |

**Scripps' Pre-Hearing Brief Regarding Subject Matter Jurisdiction**

**Hearing Date: February 14, 2022 at 11:00 am.**

As the Court indicated in its February 10, 2022 order, "[s]ubject-matter jurisdiction cannot be conferred by consent of the parties, nor can it be waived." *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004). Instead, "subject matter jurisdiction is a threshold issue that the Court must address" prior to reaching the merits. *Reed v. United States*, 426 F. Supp. 3d 498, 502 (E.D. Tenn. 2019)

That said, Plaintiff's jurisdictional challenge is meritless. In "actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *accord, e.g.*, *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (holding, in declaratory judgment action, that "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation."). Further, a "court must not dismiss an action for failure to meet the amount in controversy requirement unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Basicomputer Corp. v. Scott,* 973 F.2d 507, 510 (6th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Here, the jurisdictional threshold is met.

**A. Plaintiff's revenue and profit generation satisfies the threshold.**

In non-competition cases, the Sixth Circuit has held that the "amount in controversy" may be met by valuing the non-competition agreement, and that may

be done through reference to the sales generated by the employee in question, or the future competitive losses to the employer. Thus, in *Basicomputer Corp.*, the Sixth Circuit found that the amount-in-controversy requirement was met when the employees "generated sales worth well over $100,000 per year while they worked for" the employer. In *FirstEnergy Solutions Corp. v. Flerick*, 521 Fed. App'x. 521 (6th Cir. 2013), the threshold was met when, in the year preceding the restricted employee's resignation, the employer "reaped over $300,000 in gross profits based on his sales" and his "goals evidently required him to produce millions of dollars in revenue each year." *Id.* at 525. Based on such evidence, the court could not "say to a legal certainty" that the amount-in-controversy was less than $75,000. *Id.*

Under this methodology, the value of the non-compete at issue satisfies the jurisdictional threshold. Plaintiff's own Complaint alleges that, in just the two months prior to her termination, she generated "significant sales for Scripps, including, but not limited to, a $325,000 deal…." ECF No. 1-1, PageID.12 ¶ 34. That two-month alleged sales generation figure, by itself, exceeds the yearly sales figure in *Basicomputer* that the court found sufficient. It also suggests yearly revenue of $1.8 million, comparable to *FirstEnergy*. And, as the attached declaration of WMYD's former Director of Sales confirms, Plaintiff generated several hundreds of thousands of dollars in *net profit* in 2021 alone. Ex. A, Lamerato Decl. ¶ 4. There can be no "legal certainty" that the amount in controversy is less than $75,000 here.

**B. The amount in controversy is satisfied by reference to Plaintiff's purported losses if her requested relief is denied.**

Alternatively, the "amount in controversy" in a declaratory judgment case can be "determined from the perspective of the plaintiff, with a focus on the economic value of the rights [s]he seeks to protect." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). Here, Plaintiff makes two allegations as to the economic value at stake to her, either of which independently satisfy the threshold.

*First*, Plaintiff claims that if Scripps' non-competition agreement is not enjoined, she will lose her house. ECF No. 4, PageID.93. Courts have valued the "amount in controversy" in cases alleging the threatened loss of a home as the value of the property. *See, e.g.*, *Botsford v. Bank of Am., N.A.*, 2013 WL 5676641, at *1 (E.D. Mich. Oct. 18, 2013) (holding that "the amount in controversy—the value of Plaintiff's home—exceeds the statutorily required amount of $75,000"); *Corbitt v. Fed. Nat'l Mortg. Ass'n,* 2015 WL 4720555, at *3 (S.D. Ohio Aug. 7, 2015) (same; value of property constitutes the amount in controversy). Here, public records show that Plaintiff's home in Clarkston[1] was purchased for just over $1 million in 2007, and its current State Equalized Value for property-tax purposes (which is 50% of the true cash value under Michigan law, *see* MCL § 211.27a), is $484,270—meaning that the true cash value is about $968,000. *See* Ex. B, Oakland County Property

---

[1] Plaintiff identifies her current home address in Exhibit F of her motion for preliminary injunction. *See* ECF No. 4, PageID.88; ECF No. 4-7, PageID.130.

Record. Thus, the value of Plaintiff's home—which she specifically claims she will lose because of Scripps' conduct if the Court fails to grant relief—is "in controversy," and more than ten times the jurisdictional threshold.

*Second*, a plaintiff's actual and anticipated lost wages may be used in determining the amount in controversy. *White v. Loomis Armored US, Inc.*, 729 F. Supp. 2d 897, 902 (E.D. Mich. 2010) (citing cases). Here, Plaintiff alleges that she is being harmed because she has no income, that the Scripps non-compete prevents her from taking a General Sales Manager position that she obtained in October with Audacy,[2] and that Scripps refused and still refuses to give her a release from the non-compete. ECF No. 1-1, PageID.12 ¶¶ 29-32, 46; ECF No. 4-4, PageID.110, ¶¶ 26-31. While Plaintiff does not disclose her Audacy salary, Scripps' former Director of Sales is familiar with the local advertising market—in which Scripps and Audacy directly compete—and he is familiar with the market salaries for General Sales Managers in that market. Ex. A, Lamerato Decl. ¶ 5. Plaintiff's base salary alone may exceed $150,000 per year, and with commissions her total salary would almost certainly exceed $150,000 per year. *Id.* ¶¶ 6-7.

Given the Audacy job's value, the six-month non-compete alone would prevent her from receiving over $75,000 in salary from Audacy, and there is

---

[2]Plaintiff does not identify the employer by name in her papers, but her lawyer has told Scripps that it is Audacy, the second largest radio company in the U.S., and the owner of several local stations including WOMC, WWJ News Radio, and 97.1 FM.

-4-

-5-

assuredly no "legal certainty" that the lost Audacy salary will fall below that threshold. Further, the non-solicit term of the contract Plaintiff seeks to invalidate is one year long, meaning that without the relief requested, her Audacy sales targets (and, thus, commission potential) would continue to be restricted even if she were hired as soon as the six-month non-compete is over. Based solely on salary, there can be no "legal certainty" that the amount in controversy is less than $75,000.

## CONCLUSION

For the reasons set forth above, Scripps requests that the Court determine that the jurisdictional threshold has been met and retain jurisdiction.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: s/*Thomas J. Davis*
　　Thomas J. Davis (P78626)
　　Ryan D. Bohannon (P73394)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

Dated: February 11, 2022
438175

## Certificate of Service

    I hereby certify that on February 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

                                  /s/ *Thomas J. Davis*
                                  Thomas J. Davis (P78626)
                                  Kienbaum Hardy Viviano
                                   Pelton & Forrest, P.L.C.
                                  280 N. Old Woodward Avenue, Suite 400
                                  Birmingham, MI  48009
                                  (248) 645-0000
                                  tdavis@khvpf.com